No. 30,539.

THE TOPEKA STEAM BOILER WORKS COMPANY (and ten other claimants), *Appellees*, v. UNITED STATES FIDELITY AND GUARANTY COMPANY, *Appellant*.

(15 P. 2d 416.)

Opinion filed November 5, 1932.

*T. F. Railsback,* of Kansas City, for the appellant.

*Ezra Branine, Alden E. Branine* and *Fred Ice,* all of Newton, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: Ten corporations, firms and individuals, alleging they had furnished materials—and one that he had furnished labor used in the work—to a subcontractor, and that they had not been paid therefor, sued the surety on the subcontractor's bond for the sums they respectively claimed to be due. The eleven actions were consolidated in the trial court. The consolidated action was submitted to the court upon the pleadings and statements of counsel. Judgment was for plaintiffs. Defendant has appealed. Aside from two minor questions, which will be later discussed herein, the sole question presented for our determination is whether plaintiffs can maintain this action against this defendant.

The Atchison, Topeka & Santa Fe Railway Company, desiring to have a new depot and Harvey House built at Newton, Kan., let the contract for the construction thereof to M. R. Stauffer. By this contract Stauffer, in consideration of a stated sum to be paid him by the railway company, agreed to furnish and pay for all material and labor necessary to complete the building in accordance with plans and specifications therefor, which by reference were made a part of the contract. Stauffer, by a contract in writing, sublet a part of this work to M. P. Connor, doing business as The Connor Construction Company. Connor gave to Stauffer a bond for the faithful performance of his contract. The defendant is the surety on that bond. Plaintiffs furnished material and labor which went into the construction of that part of the building called for by Connor's subcontract. They did not file mechanics' lien statements, nor did they sue the railway company, nor Stauffer or his bondsmen, nor did they sue Connor. The sole defendant is the surety on Connor's bond.

Appellant contends plaintiffs are strangers to the contract and to the bond for its faithful performance; that the surety never undertook any obligation as to them; is not liable to them in any event, and hence that they cannot maintain an action on the bond. It is well settled in this state that third persons not parties or privy to a contract may, nevertheless, sue upon the contract to enforce any stipulation therein made for their special benefit. (*Life Assurance Society v. Welch, as Sup't, &c.*, 26 Kan. 632; *Burton v. Larkin*, 36 Kan. 246, 13 Pac. 398; *Manufacturing Co. v. Deposit Co.*, 100 Kan. 28, 163 Pac. 1076.) The real question, therefore, for our determination, and the specific point in controversy here, is whether the contract between Stauffer and Connor, and the bond given to secure its faithful performance, contain any stipulations or provisions made for the special benefit of persons who furnished material and labor to Connor which were used in carrying out his contract. In its final analysis the question is, Did Connor agree to pay for material and labor necessary to carry out his contract with Stauffer, or did he simply agree to furnish them? This causes us to examine the provisions of the contract and bond.

The contract between Stauffer, of the first part, and Connor recites:

"Whereas, said party of the first part has entered into a contract with The Atchison, Topeka & Santa Fe Railway Company, a corporation, for the construction and building of a depot and Harvey House to be located in the

city of Newton, Harvey county, Kansas, and to furnish all labor, material, equipment, etc., necessary to complete the work in accordance with plans and specifications known as General Specifications for depot and Harvey House at Newton, Kan., for The Atchison, Topeka & Santa Fe Railway Company, including all plans and drawings, being—

C. E. S. 8501

C. E. O. T. 201

15787

The general drawings of which consist of 18 sheets of architectural plans and details, file C. E. S. 8501, sheets Nos. R/18, 1/18, 1A/18, 2/18, 3/18, 4/18, 5/18, 6/18, 7/18, 8/18, 9/18, 10/18, 11/18, 12/18, 13/18, 14/18, 15/18, T. S./18, and specifications consisting of 91 sheets No. C. E. O. T. 15787, and which plans, specifications and drawings are hereby initialed by the parties hereto for the purpose of identification, a copy thereof being furnished to said party of the second part; and are hereby referred to and made a part hereof as fully in all respects as if incorporated herein at length, and,

"Whereas, said party of the first part desires to sublet to said party of the second part a contract to furnish all labor, material, equipment, etc., necessary to complete the plumbing and heating of said above-mentioned building according to the plans and specifications thereof;

"Witnesseth, That for and in consideration of the above averments, the mutual promises and conditions herein contained, and the sum of twenty thousand, five hundred sixty ($20,560) dollars to be paid as hereinafter provided, it is agreed by and between the parties hereto as follows:

"First. Said party of the second part shall furnish all labor and material, equipment, fixtures, etc., necessary to construct, equip and install, and shall so construct, equip and install all" . . . (The work to be done is specified.)

"Fifth. Specific reference is hereby made to the general conditions of the specifications hereinabove referred to, being sheets Nos. 1 to 11, inclusive, and it is understood and agreed by and between the parties hereto that they, except where herein specifically modified, shall be binding upon said party of the second part in so far as they effect, govern or control the furnishing of labor, material, equipment, fixtures, etc., necessary to construct, equip and install all plumbing and heating and the labor, materials and equipment contained in paragraph second hereof, all in accordance with the plans and specifications and drawings herein above referred to. And it is hereby agreed that said party of the first part may in his own name and right, as against said party of the second part, enforce and rely upon said general conditions as fully and to the same extent as the Atchison, Topeka & Santa Fe Railway Company. . . .

"Tenth. Said party of the first part shall pay to said party of the second part the contract price of this agreement, namely, $20,560, as follows: On or about the 20th day of each month the value of the materials that have been placed in the before-mentioned building and the value of the labor expended on the same during the previous month which has been furnished or performed by said party of the second part under the terms of this agreement, shall be estimated by the chief engineer of the Atchison, Topeka & Santa Fe Railway

Company, and ninety (90) per cent of this value shall be paid, and the remaining ten (10) per cent when said work shall have been completed in accordance with the drawings, specifications, plans and terms of this contract."

The bond given by Connor as principal and this appellant as surety to Stauffer is in the penal sum of $20,560, and recites the execution of the contract and provides:

"Now, therefore, if the said principal shall faithfully perform or cause to be performed all of the terms and conditions, warranties and guarantees of said contract, and of the said specifications therein referred to in accordance with the true spirit and intent of said contract, and shall do and perform each and every act on his part to be kept and performed according to the terms and conditions of said contract, then this obligation to be void, otherwise to be and remain in full force and effect."

The parties in this court differ with respect to how much of the contract between Stauffer and the railway company, and the plans and specifications for the construction of the building, by reference made a part of that contract, is embodied in the contract between Connor and Stauffer. Appellees contend that all of those provisions that could have any bearing upon the contract between Connor and Stauffer are so incorporated. This view is taken from the first "Whereas" clause in the Connor-Stauffer contract. Appellant contends that the only parts so incorporated are the "general conditions of the specifications" specifically referred to in the fifth paragraph of the Connor-Stauffer contract, and that these are incorporated only "in so far as they effect, govern or control the furnishing of labor, material, equipment, fixtures, etc., necessary to construct, equip and install" the work to be done by Connor. We shall not analyze this controversy carefully, for in deciding this appeal we need to consider no more of the plans and specifications than appellant concedes to be embodied in the Connor-Stauffer contract. The "general conditions of the specifications" consist of eleven typewritten pages under the title "general conditions." It consists of a number of paragraphs relating to the specifications and the contract for the work to be performed and how it should be paid for, under more or less appropriate subtitles, such as "scope and requirements of general contract," "drawings," "responsibility," and many others. One of these subtitles is the word "liens." The paragraph under it reads:

"It is understood that the contractor shall pay in full, all persons who perform labor and ninety per cent (90%) of the cost of all material placed in the

job, before submitting monthly estimate and if called upon to do so at any time by the chief engineer, the contractor shall furnish proof that he has complied with the foregoing. Upon final settlement he shall furnish satisfactory evidence that all persons who have performed labor or furnished material under his contract, have been fully paid, and in case such evidence is not furnished, the chief engineer shall have the right to cause to be retained any moneys due the contractor until all liabilities are fully discharged by paying them from such moneys as may be due him."

Another subtitle is "expense." The paragraph under it reads:

"It is understood that all of the requirements of these specifications shall be performed at the sole cost and expense of the general contractor unless otherwise specifically stated."

We recognize that the primary meaning of the word "furnish" is to provide or supply that which is necessary. (Webster's New International Dictionary.) It does not necessarily imply ownership of the thing furnished, but may include authority to use it for the needed purpose, and when one contracts simply to furnish what is necessary, and does so, ordinarily there is no liability on the bond given to secure the faithful performance of the contract. (*Road Supply and Metal Co. v. Bechtelheimer*, 119 Kan. 560, 240 Pac. 845.) But in contracts for the construction of buildings where the contractor agrees to furnish the material and labor necessary to complete the building, which material and labor necessarily enter into and become a part of the completed structure, and where the price to be paid the contractor is deemed sufficient to enable him to pay for the material and labor, the word takes on a more definite implication that he shall pay for it. Other provisions of the contract may be looked to, to determine whether under the contract as a whole he agreed to pay for the material as well as to furnish it. The bond in this case releases the surety only when the principal has performed his contract "in accordance with the true spirit and intent of said contract." What is the true spirit and intent of the contract made between Connor and Stauffer with respect to Connor paying for material and labor as well as simply to provide it? We think there can be but one answer to that question, and that is that Connor obligated himself to pay for the material and labor. Certainly Stauffer never intended to pay Connor more than $20,000 for simply requesting persons, by letter or otherwise, to send materials and to perform labor to enable him to complete his contract. The railway company, in its contract

with Stauffer, specifically required that labor and material which went into the building be paid for. It did not want a building for its use for which materialmen and laborers had not been paid. Stauffer, under obligation to see that bills for material and labor were paid, naturally would want Connor to pay for the material and labor for the work subcontracted by him, particularly if he was to pay Connor enough money to justify him to do so. More than that, a paragraph of the "general conditions of the specifications," conceded by the parties to be incorporated in the Connor-Stauffer contract by reference, provides specifically "the contractor shall pay in full, all persons who perform labor" and ninety per cent of the cost of all material at the time of each estimate and at the time of final settlement shall furnish evidence that all persons who have performed labor or furnished material under the contract have been fully paid. And by the tenth paragraph of the Connor-Stauffer contract ninety per cent of materials used and labor expended shall be paid each month, and the remaining ten per cent on the completion of the work. When, from the contract as a whole, it is clear that the contractor was to pay for material and labor necessary for the construction of the building, and a bond is given to secure the faithful performance of the contract, materialmen and laborers who have not been paid may sue directly upon the bond. (*Manufacturing Co. v. Deposit Co.*, supra; *Road Supply & Metal Co. v. Casualty & Surety Co.*, 121 Kan. 299, 246 Pac. 503; *Cooke v. Luscombe*, 132 Kan. 147, 294 Pac. 849.)

Appellant recognizes the force of the decisions last quoted, but argues they cannot be applied here for the reason that the paragraph of the "general conditions of the specifications," made a part of the Connor-Stauffer contract by reference, with the subtitle "liens," is, by the use of that word in the subtitle, limited to those who can file mechanics' liens under our statute relating thereto; and it is further argued that the plaintiffs in these actions are subcontractors of a subcontractor and for that reason do not come within the class of persons having mechanics' liens under our statute, citing on this last point *Nixon v. Cydon Lodge*, 56 Kan. 298, 43 Pac. 236, and *Indiana Limestone Co. v. Cuthbert*, 126 Kan. 262, 267 Pac. 983. We cannot agree with appellant that the word "liens" limits the meaning of the language used in the paragraph referred to. Perhaps as applied to the original contractor it might

do so, but we do not need to determine that question, for it is not before us. But certainly it can have no such limitation when incorporated into a subcontract. It has no force in a subcontract if given the meaning appellant contends for, and might as well have been omitted therefrom. The fact that it is included in the subcontract indicates that the parties desired it to have some use there. The language of the paragraph does not limit it to those who might obtain mechanics' liens under our statute but specifically includes all persons who performed labor and furnished material used.

Passing now to the minor questions mentioned earlier in this opinion. Appellant contends there is a duplication of items in the account of the plaintiff, The Topeka Steam Boiler Works Company, in the sum of $149.40. The point is well taken. It seems that there was confusion either in the order or in filling it for certain valves and two sets were sent, only one of which was used in the building. That which was used is all this appellant bound itself to see was paid for. The other minor point relates to the claim for labor of the plaintiffs Grimes & Grimes. They do a transfer business at Newton and had performed labor for Connor by hauling material from where it was unloaded from freight cars to the place where it was to be put in the building. Under the statements of counsel with respect to this work, and the finding of the trial court thereon, this was labor necessary to be performed by Connor in carrying out his contract. We see no reason why appellant is not liable for it.

The judgment of the court below will be modified by deducting from the amount allowed The Topeka Steam Boiler Works Company the sum of $149.40, and as so modified it is affirmed.