Anthony M. Livoti, J.
This action was tried before this court without a jury. It consists of four causes of action: the first cause of action is for goods sold and delivered to defendant Gerald Russell McNulty, doing business as McNulty Brothers (hereinafter called “ McNulty ”); the second cause of action is for an account stated against defendant McNulty; the third cause of action is against defendants John T. Brady & Company, Inc. (hereinafter called “ Brady ”) and Fidelity & Deposit Company of Maryland (hereinafter called “ Fidelity ”) based upon a labor and material payment bond furnished and executed by defendant Brady, as principal, and defendant Fidelity, as surety, delivered to the County of Nassau pursuant to the *567 requirements of a certain contract entered into by and between the County of Nassau and defendant Brady, and the fourth cause of action is against defendants Brady and Fidelity based upon a construction performance bond executed by defendant Brady, as principal, and defendant Fidelity, as surety, and delivered to the County of Nassau pursuant to the requirements of a certain contract entered into by and between the County of Nassau and defendant Brady.
In the construction of a public improvement defendant Brady had an agreement, as general contractor, with the County of Nassau for the construction of the Nassau County Office Building, No. 3. Defendant Fidelity had executed and delivered to the County of Nassau a construction performance bond and a labor and material payment bond in the amount of $2,437,000 guaranteeing defendant Brady’s prompt payment of moneys due to persons supplying labor and/or materials in carrying out the contract. The plaintiff is such a materialman. McNulty, a defendant, held a subcontract for certain roofing work and materials required under the general contract. Plaintiff had supplied the subcontractor, defendant McNulty, with building materials consisting of extruded aluminum louvers complete with bird screens and all necessary clips, etc., at an agreed price of $4,954, which materials were necessary for the performance of the contract with Nassau County. When defendant McNulty defaulted on its subcontract, the work was completed by the general contractor at a cost exceeding any balance due to the subcontractor, defendant McNulty.
The credible testimony and documentary evidence establish that all of the materials here involved were ordered by and delivered to defendant McNulty and used upon said project with the knowledge of the defendants. It is thus readily apparent that there is no defense to the first and second causes of action.
On December 23, 1958, plaintiff sold and delivered to defendant McNulty at Nassau County Office Building, No. 3, Old Country Road and County Seat Drive at Mineóla, Long Island, New York, 12 sets of model FH 44 aluminum louvers complete with bird screens, etc., at a total agreed price of $4,890.
Thereafter, on June 25, 1959, and on several prior occasions, plaintiff communicated by mail with defendant Brady demanding payment for said building materials, for which defendant McNulty failed to pay, and, at the request of defendant Brady, additional materials were sold and delivered by plaintiff on July 2,1959, at an additional price of $64, with the assurance by defendant Brady that plaintiff would be paid the entire unpaid balance without further delay.
*568 On July 16, 1959, plaintiff again sent a letter to defendant Brady advising of the sum due it from defendant McNulty and demanding payment. On July 22, 1959, plaintiff received a reply, dated July 21,1959, from defendant Brady which stated:
“ This is to acknowledge receipt of your letter dated July 16, 1959 relative to the McNulty Brothers indebtedness of approximately $5,000.00 due you for materials furnished them in re: the above project.
‘1 Please be advised that we have a payment which has accrued to the credit of McNulty Brothers. If you will get their authorization for us to release payment to you we will be glad to release payment of $1,200.00 to you at this time and henceforth as payments accrue if authorized to do so by McNulty Brothers.”
On November 2, 1959, the plaintiff filed a mechanic’s lien for the materials furnished to the defendants pursuant to section 12 of the Lien Law of the State of New York. On November 18, 1959, plaintiff’s attorney wrote to the home office of defendant Fidelity notifying them that the plaintiff filed the said mechanic’s lien and demanding payment due plaintiff from defendants McNulty and Brady. On November 25,1959, defendant Fidelity acknowledged receipt of plaintiff’s attorney’s communication of November 18, 1959, regarding balance due plaintiff and informed him that the home office was forwarding a copy of plaintiff’s attorney’s letter to Mr. A. K. Bennett, manager and claim attorney for defendant Fidelity at its New York office which was assigned to handle such claim, and that plaintiff’s attorney may expect “to hear from Mr. Bennett during the course of the next few days. ’ ’
On December 2,1959, defendant McNulty, pursuant to defendant Brady’s letter to plaintiff dated July 21,1959, forwarded an authorization to defendant Brady to release $4,954 to plaintiff for materials furnished, delivered and installed on the Nassau County Courthouse from moneys accrued from defendant McNulty’s account. On December 9, 1959, defendant Brady’s attorney informed plaintiff that due to the plaintiff having filed a mechanic’s lien and defendant McNulty having left the job uncompleted, defendant Brady would not, under and circumstances, honor such assignment as was given to plaintiff by defendant McNulty.
When, however, more than three months elapsed without a further reply from defendant Fidelity, plaintiff’s attorney on March 10,1960, addressed another letter to defendant Fidelity’s home office informing them that he had not heard from Mr. A. K. Bennett. On March 15, 1960, plaintiff’s attorney received a response from W. D. Bollinger, manager and attorney for *569 defendant. Fidelity’s home office stated that he had talked hy telephone with Mr. Bennett and that Mr. Bennett would “ write you promptly, advising of our position.” On March 16, 1960, plaintiff’s attorney received a letter from defendant Fidelity’s A. K. Bennett which stated, in part: “ This Company as surety looks to its principal John T. Brady & Go., Inc. to indemnify it against any loss under the bonds referred to. We assume you have been informed as to the position of our principal regarding this claim. Under the circumstances, I do not believe there is any further action we can take in this matter at the present time.”
On March 25, 1960, plaintiff’s attorney forwarded proof of claim duly verified by plaintiff’s president on March 19, 1960, to defendant Fidelity’s home office. On April 2,1960, plaintiff’s attorney received an acknowledgement of his claim letter from defendant Fidelity’s W. D. Bollinger stating in part: “ In view of the dispute between principal in the bond and its subcontractor, our hands, as surety, are tied, and we cannot take position different from that of the Brady Company which has the primary liability. ’ ’
The only objection interposed by defendants Brady and Fidelity to the third cause of action is that plaintiff did not comply with the conditions prescribed in the said labor and material payment bond in that proper and timely notice was not given before the commencement of this action. [See 28 Mise 2d 85.] The court fails to find any basis for this claim.
There is a basic difference between a construction performance bond and a labor and material payment bond. They serve and are intended to serve entirely separate and different purposes. The construction performance bond, or, as it is sometimes referred to “completion bond,” is given to insure the public authority that the contract once awarded would be completed as awarded within a fixed period of time.
In 1938, as a matter of public policy, the Legislature incorporated a new section (38, subd. [a]) to the State Finance Law which was thereafter renumbered section 137 of the State Finance Law for the purpose of protecting all persons for whose benefit it was enacted, against nonpayment for labor and materials furnished in the execution of a public project, even though payment to such persons results in a total cost of the project in excess of the original contract price. Thus, it is readily apparent that the State has declared its policy to" be that persons furnishing labor and materials to a contractor or subcontractor on a public project shall be paid by the contractor, even if by so paying the cost to the contractor is in excess of the contract fixed price; that such *570 persons shall not be left exclusively to the remedies provided by the Lien Law, but, be afforded the additional assurance of payment to all laborers and materialmen as defined by section 2 of the Lien Law since very often there are cases where the balance due the contractor is not sufficient to pay the lienors in full. Therefore, a labor and material payment bond is exacted in order that the persons for whose benefit the bond is exacted shall be paid in full, without regard to the status of what may be due to the contractor or to his subcontractor under his contract, or what may be due to the public authority from the surety under the construction performance bond. (Chittenden Lbr. Co. v. Silberblatt & Lasker, 288 N. Y. 396; State Bank of Albany v. Dan-Bar Contr. Co., 23 Misc 2d 487, affd. 12 A D 2d 416.)
In the instant action, such labor and material payment bond runs to the County of Nassau, as a public authority, as obligee, but it is clearly intended not for the benefit or protection of the County of Nassau against such claims as are therein sought to be protected, but solely for the benefit and protection of all persons supplying the contractor or a subcontractor with labor and/or materials employed and used in carrying out the contract. Such bond is intended to inure solely to the benefit of the person supplying such labor and/or materials to the contractor or to his subcontractor in the execution of said public project, and the plaintiff is such person. Thus, this is now the public policy of the State.
In Chittenden Lbr. Co. v. Silberblatt & Lasker (supra, p. 402), in considering section 137 of the State Finance Law, the Court of Appeals said: “We think that an interpretation so literal as the one urged upon us by the respondents is not to be applied to section. 137 of the State Finance Law which manifestly had for its purpose to give protection to laborers and materialmen in situations of which the one here involved is typical. ’ ’
As was stated by Cardozo, Ch. J., in Surace v. Danna (248 N. Y. 18, 21): “ The thought behind the phrase proclaims itself misread when the outcome of the reading is injustice or absurdity (Smith v. People, 47 N. Y. 330, 341, 342; Matter of Meyer, 209 N. Y. 386, 389). Adherence to the letter will not be suffered to ‘ defeat the general purpose and manifest policy intended to be promoted ’ (Spencer v. Myers, 150 N. Y. 269, 274; People ex rel. Wood v. La Combe, 99 N. Y. 43; Matter of Folsom, 56 N. Y. 60, 66; Kent’s Comm. 462).”
In Hill v. American Sur. Co. (200 U. S. 197, 202-203) the United States Supreme Court made the well-known statement, which is particularly applicable here: “ ‘ The rule strictissimi juris is a stringent one, and is liable at times to work a practical *571 injustice. It is one which ought not to be extended to contracts not within the reason of the rule, particularly when the bond is underwritten by a corporation which has undertaken for a profit to insure the obligee against a failure of performance on the part of the principal obligor. Such a contract should be interpreted liberally in favor of a subcontractor, with a view of furthering the beneficient object of the statute. * * * ’ The courts of this country have generally given to statutes intending to secure to those furnishing labor and supplies for construction of buildings a liberal interpretation, with a view of effecting their purpose to require payment to those who have contributed by their labor or materials to the erection of buildings to be owned and enjoyed by those who profit by the contribution of such labor or material. Mining Co. v. Cullens, 104 U. S. 176, 177.”
Moreover, in the opinion of the court the foregoing facts and proof presented in this case unquestionably support a finding that defendant Brady had misled and lulled the plaintiff into the assurance that the plaintiff would be paid in full. The defendant Fidelity also lulled plaintiff into a degree of inactivity that no further notices to be served were necessary, but defendants Brady and Fidelity and their attorneys deliberately engaged in protracted negotiations and represented that if plaintiff would obtain an assignment from defendant McNulty, payment would be made promptly. And, following said assertion, defendant Fidelity’s attorney on November 25, 1959, acknowledged receipt of plaintiff’s attorney’s communication of November 18, 1959, and promised that he would hear from their Mr. Bennett “during the course of the next few days.” No further communications were received from defendant Fidelity until plaintiff’s attorney on March 10, 1960, inquired concerning the delay and was told again that their Mr. Bennett would “write you promptly, advising of our position.” Thereafter, after an elapse of almost four months, on March 16, 1960, plaintiff’s attorney received a letter from Fidelity’s A. K. Bennett refusing to honor plaintiff’s claim and stating “This Company as surety looks to its principal John T. Brady & Co., Inc. to indemnify it against any loss under the bonds referred to.”
There can be no doubt that the evidence adduced at the trial amply supports a finding that the defendants are estoppéd from asserting any defense that the plaintiff failed to serve written notice within 90 days after such claimant did or performed the last of the work or labor, or furnished the last of the materials for which said claim is made to the principal, the owner and the surety. (Triple Cities Constr. Co. v. Maryland Cas. Co., 4 N Y 2d 443, 448.)
*572 It has been said that an estoppel “rests upon the word or deed of one party upon which another rightfully relies and so relying changes his position to his injury.” (Metropolitan Life Ins. Co. v. Childs Co., 230 N. Y. 285, 292; Lynn v. Lynn, 302 N. Y. 193, 205.) Moreover, “A party may not, even innocently, mislead an opponent and then claim the benefit of his deception. A person may not rely upon a condition imposed for his benefit when failure to perform the condition is due to his own act.” (Romano v. Metropolitan Life Ins. Co., 271 N. Y. 288, 293; also Syracuse Light. Co. v. Maryland Cas. Co., 226 N. Y. 25, 36; Triple Cities Constr. Co. v. Maryland Cas. Co., supra.)
As to the fourth cause of action, the plaintiff has no right of recovery under the construction performance bond as outlined herein. Thus the fourth cause of action is dismissed.
The court finds a verdict in favor of the plaintiff in the first, second and third causes of action. Accordingly, judgment is rendered against all defendants in the sum of $4,954, together with interest and costs.