DEALERS ELECTRICAL SUPPLY, APPELLEE, V. UNITED
STATES FIDELITY AND GUARANTY COMPANY,
A CORPORATION, APPELLANT.

258 N. W. 2d 131

Filed October 12, 1977. No. 41174.

Daniel A. Martin of Kerrigan, Line, Martin & Hanson, for appellant.

John L. Cutright, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ.

Brodkey, J.

Dealers Electrical Supply ("Dealers"), plaintiff and appellee herein, filed a petition in the District Court for Dodge County alleging that defendant United States Fidelity and Guaranty Company ("USF&G") was liable to it under a construction bond for the value of labor and materials supplied by Dealers to a prime contractor on a private construction project. USF&G denied liability in its answer, alleging that the bond it issued afforded protection only to the project owner, and not to subcontractors or materialmen. Dealers filed a motion for summary judgment, which was sustained by the District Court. USF&G has now appealed, and the sole issue presented to this court is whether Dealers was protected by the bond issued by USF&G, or whether the bond afforded protection only to the project owner. We affirm the judgment of the trial court.

The facts relevant to this appeal are as follows. In March 1974, Duckwall Stores Co., Inc., entered into a contract with the C. V. D. Corporation for construction of a building on certain real estate. The contract price for the building was $460,000, including all labor and materials except the cost of a lift station. The prime contract specifically required the

contractor to provide a performance bond and a payment bond, the latter "conditioned that the Contractor as principal, shall pay all indebtedness incurred for labor, supplies, equipment and materials furnished in performing the work called for by the contract documents."

USF&G, in connection with the construction contract, executed a bond on the behalf of the C. V. D. Corporation. Duckwall Stores Co., Inc., was the obligee designated in the bond, and the C. V. D. Corporation was the principal. The bond specifically referred to the construction contract, which was annexed to the bond. The bond provided: "NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, That if the said Principal shall well and truly perform and fulfill all and every (sic) the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled, and shall keep the said Obligee harmless and indemnified from and against all and every claim, demand, judgment, lien, cost and fee of every description incurred in suits or otherwise against the said Obligee, growing out of or incurred in, the prosecution of said work according to the terms of the said contract, and shall repay to the said Obligee all sums of money which the said Obligee may pay to other persons on account of work and labor done or materials furnished on or for said contract, and if the said Principal shall pay to the said Obligee all damages or forfeitures which may be sustained by reason of the non-performance or mal-performance on the part of the said Principal of any of the covenants, conditions, stipulations and agreements of said contract, then this obligation shall be void; otherwise the same shall remain in full force and virtue."

Subsequent to the execution of the contract and bond, Duckwall Stores Co., Inc., deeded the real estate and assigned the contract to the Trans-Ameri-

ca Theatres Co. As a result of this assignment, the bond was, on July 10, 1974, extended by a rider executed by USF&G. The rider referred to the bond as a "Performance and Payment Bond," and named Trans-America Theatres Co. as an additional obligee on the bond.

In November and December 1974, Dealers, as a subcontractor to the C. V. D. Corporation, installed an electrical lighting system in the building. C. V. D. Corporation thereafter took bankruptcy and failed to pay Dealers for its work. The amount owed Dealers for its work was $8,225, and Dealers brought this action against USF&G to recover that amount. As previously stated, the trial court sustained Dealers' motion for summary judgment, and awarded it a money judgment of $8,225, plus interest.

There is no dispute in this case as to any material facts, and only a question of law is presented. Therefore it was appropriate for the District Court to decide the case on a motion for summary judgment. See, C. C. Natvig's Sons, Inc. v. Summers, 198 Neb. 741, 255 N. W. 2d 272 (1977).

USF&G contends that no right of action exists in favor of a materialman for labor against the surety on a private contractor's bond conditioned merely to indemnify and save harmless the owner from any pecuniary loss resulting from breach of the contract between the contractor and owner. See, 17 Am. Jur. 2d, Contractors' Bonds, § 20, p. 205; Great American Ins. Co. v. Busby, 247 Miss. 39, 150 So. 2d 131 (1963). It also contends that the plain language of the bond shows that it affords no protection to materialmen, that the provisions of the prime contract are immaterial, and that this court must refer solely to the bond in determining whether USF&G is liable to Dealers. For the reasons that follow, we find these contentions to be without merit.

As a general rule, the right of a subcontractor or

materialman to recover from the surety on a contractor's bond depends upon whether the language of the bond shows an intention of the parties to the bond to protect the subcontractor or materialman. Fowler v. Doran, 123 Neb. 37, 241 N. W. 759 (1932); Royal Indemnity Co. v. Alexander Industries, Inc., 58 Del. 548, 211 A. 2d 919 (1965); Engert v. Peerless Ins. Co., 53 Tenn. App. 310, 382 S. W. 2d 541 (1964); 17 Am. Jur. 2d, Contractors' Bonds, § 17, p. 203. Where the prime contract is referred to or incorporated in the bond, however, the contract and the bond must be read together in determining whether a subcontractor or materialman is afforded protection by the bond. Royal Indemnity Co. v. Alexander Industries, Inc., *supra;* Engert v. Peerless Ins. Co., *supra;* Schlanger v. Federal Ins. Co., 44 N. J. 17, 206 A. 2d 874 (1965). In the present case the bond specifically refers to the contract, which was annexed to the bond. Therefore, in determining whether the bond afforded protection to Dealers, the bond and the contract must be read together. USF&G's contention to the contrary is erroneous.

USF&G is correct in stating, as a general rule, that no right of action exists in favor of a materialman against the surety on a private contractor's bond conditioned merely to indemnify and save harmless the owner from any pecuniary loss resulting from the breach of any of the terms of the contract between the contractor and the owner. 17 Am. Jur. 2d, Contractors' Bonds, § 20, p. 205. The rule, however, is not applicable to the facts of this case. It is true that the bond is conditioned on the contractor keeping the owner harmless and indemnified from loss, but it is also further conditioned on the contractor performing and fulfilling all the conditions of the contract. A bond that secures performance of the contractor as well as holding the owner harmless against loss is not merely an indemnity bond. Amelco Window Corp. v. Federal Ins. Co., 127 N. J. Super.

342, 317 A. 2d 398 (1974). We believe the bond in the present case clearly falls within that category, as hereinafter demonstrated.

Generally, laborers and materialmen "may avail themselves of a bond conditioned merely upon the faithful performance of the contract, and containing no express and direct provision for their payment, where the contract expressly requires the contractor to pay such persons or to satisfy all claims for labor and materials." 17 Am. Jur. 2d, Contractors' Bonds, § 19, p. 204. Although there are no prior Nebraska cases precisely on point, there are numerous cases from other jurisdictions holding that a subcontractor or materialman is entitled to recover on a surety's bond where the contract required the contractor to pay for the cost of labor and materials needed to fulfill the contract, and where the bond was conditioned on performance of the contract by the contractor. See, Amelco Window Corp. v. Federal Ins. Co., *supra;* Engert v. Peerless Ins. Co., *supra;* Royal Indemnity Co. v. Alexander Industries, Inc., *supra;* Westinghouse Electric Corp. v. Mill & Elevator Co., 254 Iowa 874, 118 N. W. 2d 528 (1962); Gibbs v. Trinity Universal Ins. Co., 330 P. 2d 1035 (Okla., 1958). The above cases reflect the general rule and are supported by Restatement, Security, § 165, p. 457, which provides: "Where a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, unless the surety's contract in terms disclaims liability to such persons."

The above rule has been adopted in Nebraska in cases involving public construction contracts, and it has been held that materialmen may recover on a bond securing faithful performance of a public con-

tract which requires the contractor to provide all materials and work necessary to complete the building. See, Korsmeyer Plumbing & Heating Co. v. McClay, 43 Neb. 649, 62 N. W. 50 (1895); Sailling v. Morrell, 97 Neb. 454, 150 N. W. 195 (1914). USF&G contends that this court should not apply this rule in cases involving private construction contracts because in such cases the materialman can protect himself by obtaining a lien, and therefore it is inappropriate to afford him protection under the surety's bond unless the bond specifically obligates the surety to pay materialmen.

USF&G's reliance on a distinction between public and private contracts is not persuasive, as this court rejected such a distinction in Fowler v. Doran, 123 Neb. 37, 241 N. W. 759 (1932). Although the facts in that case were not precisely the same as the facts in the present case, in the opinion in that case this court approved cases from other jurisdictions which held that a materialman may sue on a construction bond where the prime contract requires the contractor to pay for labor and materials used in the work, and where the bond is conditioned on faithful performance of the contract by the contractor. The court specifically rejected the contention that this rule should not apply in cases involving private construction contracts and bonds.

There is no dispute in this case that the prime contractor, the C. V. D. Corporation, was obligated to pay for labor and materials needed to complete the building under its contract with the project owner. The bond was conditioned, in part, on the faithful performance of the contract by the contractor. Therefore, under the authorities cited above, Dealers was entitled to sue on the bond under the rule that a subcontractor or materialman may recover on a surety's bond where the contract requires the contractor to pay for the cost of labor and materials needed to fulfill the contract, and where the bond is

conditioned on performance of the contract by the contractor.

It should also be noted that the contract in this case specifically required the contractor to provide a payment bond conditioned that it would "pay all indebtedness incurred for labor, supplies, equipment and materials furnished in performing the work called for by the contract documents." The contract was referred to in the bond, and annexed thereto. It has been held in some jurisdictions that where the prime contract requires the contractor to provide a bond conditioned on the payment of laborers and materialmen, but where the bond does not explicitly contain the required condition, laborers and materialmen may nevertheless recover on the bond, particularly when the contract is made a part of the bond by reference. See 17 Am. Jur. 2d, Contractors' Bonds, § 22, pp. 206, 207. Having annexed the contract to the bond, USF&G cannot claim it was not aware of the contract provisions incorporated in the bond. Furthermore, USF&G referred to the bond as a "Performance and Payment Bond" when it executed the rider to the bond, a fact which indicates that the parties to the bond viewed it as one which fulfilled the requirements of the contract with respect to bonds. These circumstances further support the conclusion that the bond in question afforded protection to Dealers.

The contentions of the appellant USF&G are without merit, and therefore the judgment of the District Court is affirmed.

AFFIRMED.