**WYOMING MACHINERY COMPANY, a corporation, Appellant (Plaintiff),**

**v.**

**UNITED STATES FIDELITY AND GUARANTY COMPANY, a corporation, Appellee (Defendant).**

No. 5234.

Supreme Court of Wyoming.

July 24, 1980.

Donn J. McCall and B. J. Baker, Casper, signed the brief and Baker appeared in oral argument on behalf of appellant.

William S. Bon, Casper, signed the brief and appeared in oral argument on behalf of appellee.

Before RAPER, C. J., and McCLINTOCK, THOMAS, ROSE and ROONEY, JJ.

RAPER, Chief Justice.

The sole question presented in this appeal is whether a contractor's bond written by the appellee, United States Fidelity and Guaranty Company, written to Medicine Bow Coal Company, is available to satisfy a claim made by the appellant, Wyoming Machinery Company, as a third-party beneficiary to the bond, when the principal contractor, H. L. Gracik Construction, Inc. (Gracik), became financially unable to pay for equipment rental, labor, and materials supplied by appellant to Gracik.

The district court in a brief, conclusory letter decision found that the bond and contract in question could not be read to afford protection to appellant. Both the parties had moved for summary judgment. The trial judge entered summary judgment in favor of appellee.

We will affirm.

On January 20, 1975, Gracik entered into a contract to do an overburden stripping project at Medicine Bow Mine in Carbon County. One of the terms of that contract was that the owner of the mine could require Gracik to obtain a performance and payment bond. Pursuant to that provision, an amendment to the contract was entered into, also on January 20, 1975, which provided in pertinent part:

"2. Pursuant to Section 400.19 of the General Conditions of the Contract, Contractor agrees to obtain an appropriate performance and payment bond in the amount of $350,000.00, subject to reimbursement by Owner of the actual cost of bond premium. Said bond shall be obtained within ten (10) days of the date hereof, unless such time is extended by Owner in its sole discretion."

Gracik then obtained a bond through a Denver, Colorado, agent, Evan E. Moody, which bond provided:

"WHEREAS, The said Principal has executed and entered into a certain contract with the said Obligee dated

"January 20, 1975

"Contract scrapper stripping project at Medicine Bow Mine in Carbon County, Wyoming

"in said contract described; which contract is hereto annexed.

"NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION IS SUCH, That if the said Principal shall well and truly perform and fulfill all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled, and shall keep the said Obligee harmless and indemnified from and against all and every claim, demand, judgment, lien, cost and fee of every description incurred in suits or otherwise against the said Obligee, growing out of or incurred in, the prosecution of said work according to the terms of the said contract, and shall repay to the said Obligee all sums of money which the said Obligee may pay to other persons on account of work and labor done or materials furnished on or for said contract, and if the said Principal shall pay to the said Obligee all damages or forfeitures which may be sustained by reason of the non-performance or mal-performance on the part of the said Principal of any of the covenants, conditions, stipulations and agreements of said contract, then this obligation shall be void; otherwise the same shall remain in full force and virtue."

The contract, which the bond annexes had the following pertinent provisions:

*400.17 Liens.* The Contractor may not make, file or maintain or suffer or *permit to be filed a mechanic's or other lien or claim of any kind or character whatsoever against any building or other structure to which this Contract relates*, the additions, improvements, alterations or repairs made thereon, the ground on which said building or other structure is situated or any other property or property interested owned, held, occupied, or otherwise possessed by Owner, *for* or on account of *any labor, materials, fixtures, tools, machinery, equipment, or any other things furnished, of any other work done or performance given under, arising out of or in any manner connected with this Contract*, or any agreement supplemental thereto, and, the Contractor on behalf of its subcontractors, materialmen and all other persons entitled to such a *lien* or claim, hereby expressly waives and relinquishes any and all rights which Contractor or such persons now have or may hereafter acquire, to file or maintain any *mechanic's or other lien* or claim of any other kind or character whatsoever against the aforesaid property or property interests; and, the Contractor further agrees that this provision waiving the right of *liens* shall be an independent covenant, and that Contractor shall inform in writing all persons contracting to do work hereunder of this waiver and shall include a provision to that effect in all contracts made hereunder.

"The *Contractor* shall *save and hold harmless* Owner from and *against any and all loss and expense due to liens or claims of any kind* or character whatsoever that may be filed against Owner's property arising out of or in any manner connected with the performance of this Contract.

"*400.18 Payments.* The Owner agrees to pay the Contractor monthly at the rates herein provided, upon receipt of bill approved by Owner, with waivers of claims for mechanic's *liens* by all parties

who furnished labor, material, or other services included in said bill, showing work done by Contractor during the preceding month. The Owner shall retain from each bill, ten percent (10%) of the monthly bill, until final approval and acceptance of the work by Owner. *At the time of final payment, the Contractor agrees to furnish Owner with waivers of all claims for mechanic's liens, and showing that all amounts for labor, equipment, and subcontractors furnished by the Contractor have been paid in full.*" (Emphasis supplied.)

The appellant asserts that the district court erred in determining that the surety bond and the contract, when construed collectively, were not intended to provide coverage for the material and rental equipment furnished by the appellant for use in the overburden stripping project. Further, appellant contends that the surety bond and the contract must be construed collectively because the bond annexes the contract. This then leads the appellant to pose the vital questions which are the essence of this case. (1) If the surety bond is conditioned on the performance of the construction contract, may subcontractors, laborers and materialmen rely upon the underlying contract as the basis for filing suit on the surety bond as third-party beneficiaries? (2) May a subcontractor, laborer or materialman recover on a surety bond, which a contractor is obligated to obtain by the terms of his contract, where the bond is conditioned on the performance of the contract by the contractor and the construction contract requires the contractor to pay and satisfy the claims of subcontractors, laborers and materialmen? Finally, appellant asserts that if the courts determine that pertinent provisions of the bond and contract are ambiguous, then summary judgment for the appellee is inappropriate because such ambiguity constitutes a genuine issue of material fact.

In response to these assertions, appellee counters that: (1) contracts should not be construed as having been made for the benefit of third parties unless it clearly appears that it was the intention of the parties to the contract to confer a direct benefit on such third parties; (2) any third-party beneficiaries' rights which might arise in situations such as that at issue in this case must be determined by the application of the ordinary and accepted principles relating to a third-party-beneficiary theory, and such things as agreeing to indemnify the owner, furnishing material and labor, furnishing lien waivers or providing for an appropriate performance and payment bond do not constitute a clear intent to directly benefit a third party; (3) a reasonable construction of the bond and contract discloses that the contractor promised only to complete the project free of liens and to indemnify the owner from loss or claims made by laborers or suppliers, and cannot reasonably be read to express a clear promise to make direct payments to laborers and suppliers; and (4) there is no genuine issue of material fact and the bond and contract are not ambiguous in their language, hence summary judgment for appellee was appropriate.

■■ In construing the language of a contract of suretyship, the same rules apply that control in the construction of other contracts. The true intent and meaning of the contract is to be ascertained or determined according to the rules applicable to contracts generally. *Snow v. Duxstad*, 1915, 23 Wyo. 82, 120, 147 P. 174. It has long been a part of this State's jurisprudence that corporations organized to make such bonds or undertakings for profit are not favorites of the law and that their contracts should be construed most strongly in favor of the obligee. *United States Fidelity & Guaranty Co. v. Parker*, 1912, 20 Wyo. 29, 51, 121 P. 531; 32 Cyc. 306–307; 17 Am.Jur.2d, Contractors' Bonds § 3, pp. 193–194.

■ The bond in this case must be construed in conjunction with and in the light of the contract with which it was executed, since the contract is incorporated into the bond. *Dealers Electrical Supply v. United States Fidelity and Guaranty Company*, 1977, 199 Neb. 269, 258 N.W.2d 131, 134; 17 Am.Jur.2d, Contractors' Bonds § 4, p. 194. About this there is really no quar-

rel. The real question is whether, when the bond and contract are construed together, there is an intention that third parties be benefited by its protection. The appellant is, of course, a stranger to this bond and contract, and any benefit he can derive from it must be based on some theory of third-party beneficiary.

The bond at issue in this case is conditioned on the contractor keeping the owner harmless and indemnified from loss, but it is also conditioned on the contractor performing and fulfilling all the conditions of the contract. The contract provision ¶¶ 400.17 and 400.18, supra, require that the contractor take care of all claims " * * * for or on account of any labor, materials, fixtures, tools, machinery, equipment, or any other things furnished * * *." It also provides that the contractor agrees to obtain lien waivers showing that all amounts for labor, equipment, and subcontractors have been paid in full. We hold this language is not enough to create a liability by the appellant to the appellee but was designed only to protect the owner.

██ There is no question that a promise may be made to one person for the benefit of another and a third-party beneficiary may enforce his rights under a contract, although not a party to nor specifically mentioned in the contract; but there is more to it than that. An outsider claiming the right to sue must show that it was intended for his direct benefit. Otherwise he may be only an incidental beneficiary because the compelling provisions of a contract require that his claims be satisfied in order to protect another. However, an incidental beneficiary acquires no right of action against the promisor or promisee. *Peters Grazing Assoc. v. Legerski*, Wyo.1975, 544 P.2d 449; *Graham and Hill v. Davis Oil Company*, Wyo.1971, 486 P.2d 240.

██ There is not one word in the contract of suretyship which demonstrates any intention of either appellee as promisor or the mining company as promisee in the contract language that mechanics or materialmen shall have any claim against either. This is consistent with our frequently stat-

ed rule that the supreme court will not rewrite clear contracts. *Overcast v. Baldwin*, Wyo.1976, 544 P.2d 464 and cases there cited. Nor will this court rewrite contracts under the guise of interpretation. *Quin Blair Enterprises, Inc. v. Julien Construction Co.*, Wyo.1979, 597 P.2d 945, 951. The owner coal company's only concern was that it receive a lien-free job. We discern no language guaranteeing payment of laborers and materialmen.

Section 165 of the Restatement of the Law of Security states a basic rule which appears in many of the cases decided on the subject:

"Where a *surety* for a contractor on a construction contract *agrees* in terms with the owner that the *contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials*, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, unless the surety's contract in terms disclaims liability to such persons."

However, the Restatement, supra, by § 166 states the rule which prevents construing guarantee against lien language as a promise of the surety to pay laborers and materialmen:

"Where a surety guarantees the performance of a contract by a contractor who does not promise the owner to pay those furnishing labor or materials but agrees to complete the work free of liens or to furnish labor and materials, laborers and materialmen have no rights against the surety."

As set out in the text of the comment to the black letter rule, § 166:

"a. Rationale. * * * In contrast to the rule stated in § 165 where there was a promise to pay laborers and materialmen, if the surety has only guaranteed the contractor's promise to complete a construction project free of liens or to furnish labor and materials, there is no right in laborers or materialmen because there is no indicated purpose to benefit

them. Where the surety has only guaranteed that the contractor will carry out a promise to deliver a building free of liens, neither the surety nor the contractor has necessarily promised to pay laborers or materialmen. \* \* \* "

In other words, even if such liens could be established, the construction, whatever it may be, might be freed from liens in other ways than by payment.

We see no promise to pay laborers or materialmen. We see only a promise to present a completed job free of liens. Neither the contract for construction which has become a part of the surety's agreement nor the bond provided by the surety guarantee anything other than a lien-free project, thus falling under § 166 of the Restatement, supra. *Smith-Kelly Supply Co. v. General Construction Corp.*, S.D.Ala. 1975, 399 F.Supp. 184, 185, and cases there cited, aff'd without opinion, 519 F.2d 1087, 5th Cir. 1975; *United States for the Use of James E. Simon Co. v. Ardelt-Horn Construction Co.*, D.Neb.1970, 316 F.Supp. 254, 260, 261, aff'd 446 F.2d 820, 8th Cir. 1971; *Western Casualty & Surety Co. v. Stribling Bros. Machinery Co.*, 1962, 244 Miss. 12, 139 So.2d 838, 841; *Drano-Doyle Co. v. Royal Indemnity*, 1952, 372 Pa. 64, 92 A.2d 554; *Johns-Manville Sales Corp. v. Reliance Ins. Co.*, 9th Cir. 1969, 410 F.2d 277.

▮▮▮ There is no ambiguity in this bond and annexed contract which would create a material issue of fact requiring a trial and factfinding. If the language of a contract is plain and unequivocal, that language is controlling and the construction of its provisions is for the court as a matter of law. *Hollabaugh v. Kolbet*, Wyo.1980, 604 P.2d 1359, 1361 (and cases cited therein). While the language used in this contract may not have been crystal clear in its expression and syntax, it does not thereby become one which is capable of being understood in more ways than one, nor does its poor use of language cause a double meaning to be present. *Hollabaugh v. Kol-*

*bet*, supra, 604 P.2d at 1361. Because the contract is not ambiguous, at least insofar as the question at hand is concerned, the matter is one appropriate for summary judgment.

Affirmed.

ROONEY, Justice, dissenting, with whom McCLINTOCK, Justice, joins.

The courts customarily resolve the issue here presented on the basis of one of two rationales: (1) the "promise to pay" rationale, and (2) the "intention to benefit" rationale. The discussion by the court sometimes includes both rationales, but the determination usually turns on only one of them. The majority opinion does so here. It discusses the "intention to benefit" rationale, but resolves the matter on the "promise to pay" rationale as set forth in §§ 165 and 166 of the Restatement of the Law of Security.

I believe the "intention to benefit" rationale is the most logical and the most equitable. It affords recognition of the position of the "little fellow" and the background which necessitates a payment bond. The majority opinion weakens the position of the "little fellow," i. e., the ordinary laborer.[1]

I would reverse the trial court in this case by applying the "intention to benefit" rationale. However, I believe that the majority has misapplied the facts of the case to the "promise to pay" rationale and that the case should be reversed even under it.

### INTENTION TO BENEFIT

The majority opinion accurately refers to the law which is pertinent to the "intention to benefit" rationale before it turns to the "promise to pay" rationale as set forth in §§ 165 and 166 of the Restatement, supra, upon which it bases its conclusion.

The interpretation of a contract is for the court as a matter of law when the language of the contract is plain and unequivocal.

---

1. The plaintiff-appellant in this case is a materialman of some apparent means, but the holding of the case and the precedent set thereby will inure to the detriment of the working man of little or modest means.

*Hollabaugh v. Kolbet*, Wyo., 604 P.2d 1359 (1980); *Shepard v. Top Hat Land & Cattle Co.*, Wyo., 560 P.2d 730 (1977); *Goodman v. Kelly*, Wyo., 390 P.2d 244 (1964). In construing the language of a contract of suretyship the same rules apply that control in the construction of other contracts, including those by which the intent of the parties is ascertained. *Snow v. Duxstad*, 23 Wyo. 82, 147 P. 174 (1915). It has long been a part of this state's jurisprudence that corporations organized to make such bonds or undertakings for profit are not favorites of the law and that their contracts should be construed most strongly in favor of the obligee. *United States Fidelity and Guaranty Company v. Parker*, 20 Wyo. 29, 121 P. 531 (1912). The bond and the contract referred to in the bond must be read together as one instrument. *Dealers Electrical Supply v. United States Fidelity and Guaranty Company*, 199 Neb. 269, 258 N.W.2d 131 (1977); *Amelco Window Corp. v. Federal Insurance Company*, 127 N.J.Super. 342, 317 A.2d 398 (1974).

Additionally, it is noted that the bond in this case is more than an indemnity bond since it is conditioned not only on the contractor holding the owner harmless but also on performance and fulfillment of "all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled." *Amelco Window Corp. v. Federal Insurance Company*, supra; *Lake View Trust & Savings Bank v. Filmore Construction Company*, 74 Ill.App.3d 755, 30 Ill.Dec. 678, 393 N.E.2d 714 (1979); *Dealers Electrical Supply v. United States Fidelity and Guaranty Company*, supra.

The "intention to benefit" rationale is set forth as follows in 13 Couch on Insurance 2d § 47:193:

"Initially, the test whether a contractor's common-law bond has been made for the benefit of others than the obligee, such as laborers and materialmen, is determined by whether or not the contract and bond, when construed together, show an intent to protect such persons by agreeing to see that they are paid. And in construing contract guaranty bonds, the intention of the parties must control as to whose benefit it inures, which intention must be gathered from the bond, the contract which it guarantees, and the attending circumstances known to the parties at the time the bond was executed.

"By definition, a labor and materialman cannot bring suit upon a bond unless the bond manifests an intent to confer such a benefit upon him. Conversely, a contractor's indemnity bond will be construed to protect laborers, materialmen, and subcontractors where such was the evident intent of the parties."

Under this rationale, then, the controlling and dominant inquiry is whether or not the contract and bond *show an intent* to protect the laborers and materialmen by seeing that they are paid.

Looking at the language of the documents to determine whether or not they show this intent, it is necessary to continually bear in mind that the bond is conditioned on the contractor performing and fulfilling "all and every the covenants, conditions, stipulations and agreements in said contract mentioned to be performed and fulfilled." We thus examine the contract to determine if it contains language which indicates an intention by the parties to the contract for the contractor to pay the laborers and materialmen.

The contract requires "work" by the contractor to remove and stockpile topsoil, to excavate and spoil overburden, and to construct roadway embankments. Methods and requirements for doing so are set forth. "Work" is defined as:

"The *furnishing of all labor, materials, equipment, and other incidentals necessary to the successful and timely completion of the project,* and the carrying out of the duties and obligations imposed by the Contract upon the Contractor." (Emphasis supplied.)

This definition places labor, materials, equipment and the referred to incidentals into one category under the terms of the contract.

The times and conditions for payments to the contractor for the "work" is set forth as:

"103.02 *Partial Payment.* Partial payment will be made for the previous month's *work,* based on the volume determination made on the last day of the month, less ten percent (10%) retained.

"103.03 *Final Payment.* Final payment will be made within twenty (20) days of the completion of *the work* covered by this Contract, if all *work* is completed by the deadline described herein.

\*　　\*　　\*　　\*　　\*　　\*

"400.18 *Payments.* The Owner agrees to pay the Contractor monthly at the rates herein provided, upon receipt of bill approved by Owner, *with waivers of claims for mechanic's liens by all parties who furnished labor, material, or other services* included in said bill, showing work done by Contractor during the preceding month. The Owner shall retain from each bill, ten percent (10%) of the monthly bill, until final approval and acceptance of the work by Owner. At the time of final payment, the Contractor agrees to furnish Owner *with waivers of all claims for mechanic's liens, and showing that all amounts for labor, equipment, and subcontractors furnished by the Contractor have been paid in full.*" (Emphasis supplied.)

Provisions relative to the quality of "work" are:

"400.09 *Materials and Workmanship.* Unless otherwise specifically provided for in this Contract, *all workmanship, equipment and materials furnished by the Contractor* to be incorporated in the work are to be of the best grade of their respective kind for the purpose. The Contractor shall pay all royalties and license fees for all *work furnished by it,* and shall defend all suits or claims for infringement of patent rights and save Owner harmless from all loss or expense on account thereof.

\*　　\*　　\*　　\*　　\*　　\*

"400.11 *Guarantee.* In addition to the specific guarantees required by the Specifications for the work to be performed under this Contract, the Contractor guarantees all work to be performed and all materials to be furnished under this Contract against defects in workmanship for a period of one (1) year from the date of final acceptance of the completed work by the Owner. The Contractor shall, within a reasonable time after receipt of written notice thereof, repair or replace defective workmanship which may develop before the expiration of said one-year period and shall repair or replace other work which shall have been damaged by such defects or the repairing of same, *all at the Contractor's expense and without cost to Owner.*" (Emphasis supplied.)

The responsibility of the contractor for the furnishing of "work" was specified:

"400.13 *Materials Furnished by the Owner.* No materials, supplies, equipment, labor, services or any other things required for the performance of the *work* hereunder are to be furnished by Owner, unless this Contract expressly provides that any materials, supplies, equipment, labor, services or any other things are to be furnished by Owner; Owner shall use reasonable efforts to furnish same when required by the Contractor, but Owner is not liable for any delay in furnishing same." (Emphasis supplied.)

The provision pertaining to the filing of liens is set forth in the majority opinion.

The provisions for payment of wages and wage incidentals are worded as follows:

"400.22 *Social Security and Welfare Fund Payments.* The Contractor *shall* pay all taxes and contributions measured by wages, salaries or other remunerations of its employees and the employees of its subcontractors required by the Federal Social Security Act or the laws of the State in which the work is done, and *shall* pay all welfare fund payments required by any labor unions, and shall be exclusively liable for said taxes, contributions and payments. The Contractor *shall* indemnify and hold harmless Owner on

account of any taxes or contributions measured by the wages, salaries or welfare fund payments or other remunerations as aforesaid of employees of Contractor and the subcontractors assessed against the Owner under the authority of said Act or laws of said State.

\* \* \* \* \* \*

"*400.30  Labor Practices.*

"A.  *Contractor shall comply with all applicable labor laws*, regulations and customary labor practices.  Before commencing any work whatsoever under this Contract, and before permitting any of its hourly employees to enter on the work site and/or any property of Owner, Contractor shall give at least four days advance notice to Owner in writing, and only in writing signed by an officer of Contractor, of the name(s) of the labor union(s), if any, who will represent the Contractor's workers in connection with the work to be performed.  If Owner determines that such labor arrangements would threaten to interfere, obstruct or interrupt any of Owner's operations, then Owner shall so notify Contractor and, if Owner so elects, may terminate this Contract."  (Emphasis supplied.)

With reference to this last provision, it is noted that it *requires* contractor to pay its employees.  The bond is for the project at "Medicine Bow Mine."  The contractor is thus subject to the provisions of § 27–4–101(a), W.S.1977 which provides in pertinent part:

"(a) Every person, firm or corporation, engaged in the operation of any railroad, mine, refinery, and work incidental to prospecting for, or the production of, oil and gas, or other factory, mill or workshop, within the state of Wyoming, shall, on or before the first day of each month, pay the employees thereof the wages earned by them during the first half of the preceding month ending with the fifteenth day thereof, and on or before the fifteenth day of each month pay the em-

ployees thereof the wages earned by them during the last half of the preceding month  \*  \*  \*."

The contract is replete with expressed intention that the contractor pay the laborers and materialmen.  It is one of the "covenants, conditions, stipulations and agreements" contained therein.  And the bond was given to insure the performance thereof.  The contractor was to "furnish" the labor and material "of the best grade," pay the wages and incidental wage benefits to his employees, and prevent the filing of any mechanic's liens against the property.  The contract went much further than a "no lien" provision.  It required wage payment.  The contractor was not to be paid until "waivers of claims" by the laborers and materialmen were submitted.

Of course, the laborer and materialman benefited from these provisions.  Even a "no lien" provision redounds to the benefit of the laborer and materialman since it operates to force payment to them and it lessens the need to resort to the debt collecting procedure involved in lien filing.  The parties here intended a benefit to the laborers and materialmen.

The very purpose of a payment bond reflects the intention to provide a benefit to the laborers and materialmen.

" \*  \*  \*  The primary purpose of the performance bond is to indemnify \*  \* [building owner] against breach by \*  \* [the contractor] and that of the payment bond is to assure payment to specified third parties [Citations]  \*  \*  \*.  'There is a basic difference between a construction performance bond and a labor and material payment bond.  They serve and are intended to serve entirely separate and different purposes.'  \*  \*  \* " (Bracketed material added.)  *Novak & Co., Inc. v. Travelers Indemnity Company*, 85 Misc.2d 957, 381 N.Y.S.2d 646, 649 (1976).

" \*  \*  \*  [A] labor and material payment bond is exacted in order that the persons for whose benefit the bond is

exacted shall be paid in full, without regard to status of what may be due to the contractor or to his subcontractor under his contract, or what may be due to the public authority from surety under the construction performance bond. * * " *Extruded Louver Corporation v. McNulty*, 34 Misc.2d 566, 226 N.Y.S.2d 220, 224 (1962).

" * * * The contract was referred to in the bond, and annexed thereto. It has been held in some jurisdictions that where the prime contract requires the contractor to provide a bond conditioned on the payment of laborers and materialmen, but where the bond does not explicitly contain the required condition, laborers and materialmen may nevertheless recover on the bond, particularly when the contract is made a part of the bond by reference. * * * " *Dealers Electrical Supply v. United States Fidelity and Guaranty Company*, supra, 258 N.W.2d at 135.

The "intention to benefit" rationale does have an element of social interest—an interest to protect the "little fellow." By legislation in most states the protection here sought is mandated in contracts with governmental agencies. In this case, the action was against appellee on two separate bonds. The one which is subject of this appeal was furnished the contractor for the Medicine Bow Coal Company project. The other was for a Colorado Highway Department project, and the trial court found for appellant under the Colorado law. The premium paid for the risk covered by this bond was testified to be the same regardless of whether or not the laborers and materialmen were entitled to benefit of it. If default in performance under the contract were made before completion of it, causing the appellee to complete the contract pursuant to the performance portion of the bond, the appellee would have to pay for the necessary labor and materials. Such considerations bear on the "intention to benefit" rationale and result in the determination that the parties intended for appellant to have a benefit from the documents upon which action will lie.

## PROMISE TO PAY

The "promise to pay" rationale used by the majority of the court in resolving the issue here presented is narrower than the "intention to benefit" rationale. It is expressed in the Restatement sections cited by the majority. It is more completely explained in 4 Corbin on Contracts § 798, pp. 163–164, as follows:

"We should now start with the general proposition that two contracting parties have power to create rights in a third party. This has long been a general rule; it is not an 'exception.' 'Privity' is not necessary: the third party need not be a 'promisee' nor need he give consideration. Secondly, it is not necessary to the creation of rights in the third party against the promisor that the promisee should owe any legal, equitable, or moral duty to the third party. This, also, has long been the prevailing rule; but there is a line of cases stating the contrary, though very often keeping the actual decision in harmony with it. And thirdly, the third party has an enforceable right if the surety promises in the bond, *either in express words or by reasonable implication*, to pay money to him. If there is such a promissory expression as this, there need be no discussion of 'intention to benefit.' We need not speculate for whose benefit the contract was made, or wonder whether the promisee was buying the promise for his own selfish interest or for philanthropic purposes. It is a much simpler question: Did the surety promise to pay money to the plaintiff?" (Emphasis supplied.)

And again at § 800, pp. 177–178:

"The words used in building contracts and in accompanying surety bonds are now usually such that they are and should be interpreted as a promise by the surety to pay laborers and materialmen

in case of default by the contractor. Often the construction contract contains an express promise by the contractor; and the bond is either conditioned expressly on such payment or on full performance by the contractor of all his promises. The third parties are often definitely indicated in that part of the bond specifying the conditions. *Words of 'condition' are not words of 'promise' in form; but in this class of cases it is sound policy to interpret the words liberally in favor of the third parties.* In a majority of states, it is already done; and without question the surety's rate of compensation for carrying the risk is sufficiently adjusted to the law. The compensated surety has become an institution that is well suited to carry the risk of the principal contractor's default, whereas individual laborers and materialmen are frequently very ill prepared to carry the risk. The legislatures have recognized this fact, and in the case of public contracts have required surety bonds to protect the third parties. While this has not been done in the case of private construction, and while the courts should not on their own motion put such a provision into a private surety bond, *they may well interpret a bond that is expressly conditioned on the payment of laborers and materialmen as being a promise to pay them and made for their benefit.* The words reasonably permit it, and social policy approves it. The court need not strain the words of the bond, as has sometimes been done, to hold that the third persons were not intended as beneficiaries thereof, even though the promisee may have been thinking chiefly of himself when he paid for the bond." (Emphasis supplied.)

In some instances, this narrower approach would deny recovery wherein the "intention to benefit" rationale would not. However, in this case, the "promise to pay" is sufficiently expressed or is indicated "by reasonable implication." The contract provisions previously recited and referred to for the purpose of indicating the intention of the parties in this respect, are equally persuasive to reflect the "promise to pay." A fair reading of the contract reflects the imposition on the contractor of the duty to pay the cost of labor and materials needed to fulfill the contract. The conclusion has been expressed as follows:

" * * * Although there are no prior Nebraska cases precisely on point, there are numerous cases from other jurisdictions holding that a subcontractor or materialman is entitled to recover on a surety's bond where the contract required the contractor to pay for the cost of labor and materials needed to fulfill the contract, and where the bond was conditioned on performance of the contract by the contractor. See, *Amelco Window Corp. v. Federal Ins. Co.,* supra; *Engert v. Peerless Ins. Co.* [53 Tenn.App. 310, 382 S.W.2d 541] supra; *Royal Indemnity Co. v. Alexander Industries, Inc.* [8 Storey 548, 58 Del. 548, 211 A.2d 919] supra; *Westinghouse Electric Corp. v. Mill & Elevator Co.,* 254 Iowa 874, 118 N.W.2d 528 (1962); *Gibbs v. Trinity Universal Ins. Co.,* 330 P.2d 1035 (Okl., 1958). The above cases reflect the general rule and are supported by Restatement, Security, § 165, p. 457, which provides: 'Where a surety for a contractor on a construction contract agrees in terms with the owner that the contractor will pay for labor and materials, or guarantees to the owner the promise of the contractor to pay for labor and materials, those furnishing labor or materials have a right against the surety as third party beneficiaries of the surety's contract, unless the surety's contract in terms disclaims liability to such persons.' " *Dealers Electrical Supply v. United States Fidelity and Guaranty Company,* supra, 258 N.W.2d at 135.

" * * * When, from the contract as a whole, it is clear that the contractor was to pay for material and labor necessary for the construction of the building, and a bond is given to secure the faithful performance of the contract, materialmen and laborers who have not been paid may

sue directly upon the bond. * * * " *Topeka Steam Boiler Works Co. v. United States Fidelity & Guaranty Co.*, 136 Kan. 317, 15 P.2d 416, 419 (1932).

Appellee should be held to perform under the bond for which it received the agreed upon stipulation by providing the relief sought by appellant.

I would reverse that part of the order and summary judgment of the trial court dismissing with prejudice count I of appellant's complaint, and remand the case with instructions to enter a summary judgment in favor of appellant on count I of its complaint.