OPINION OF THE COURT
Aaron E. Klein, J.
In this CPLR article 78 proceeding, petitioner seeks to challenge the determination of respondent, John T. Fitzpatrick, as State Reporter of the State of New York (hereinafter Fitzpatrick) in having permitted the respondent, Lawyers Cooperative Publishing Company (hereinafter LCP) to conform its bid to the specifications for the subject contract, to wit: a contract for the publication and printing of all official reports of the courts of the State of New York for the five-year period commencing January 1, 1986; and upon such challenge, an *1069 nulling the award of said contract to LCP, and further directing respondent Fitzpatrick to take such other and further proceedings with respect to the said contract as justice should dictate. A respondent in these proceedings, apparently by virtue of his statutory involvement in this contracting, is Sol Wachtler, in his capacity as Chief Judge of the Court of Appeals of the State of New York (hereinafter Chief Judge).
At the outset, it must be noted that the application in petitioner’s order to show cause for a preliminary injunction pending the hearing and final determination of these proceedings was withdrawn by counsel for petitioner in open court at oral argument on these proceedings on December 20, 1985.
The remaining subject matter concerns the apparatus by which contracting is legislatively mandated to be had for the publication and printing of all official New York State court reports for the aforementioned five-year period commencing January 1, 1986.
Judiciary Law § 434 provides the step-by-step procedure to be followed in public contracting for the printing and publication of official series court reports. The statute states as follows:
"§ 434. Contracts for publication of reports
"1. The printing and publication of the court of appeals reports, the appellate division reports, the miscellaneous reports and the combined official series shall be done under contract as hereinafter provided.
"2. Said contract shall be let and said publication shall be made by and under the direction of the state reporter.
"3. [As to effective date, see note below]* In each year immediately preceding the expiration of the contract to be let as hereinafter provided, the state reporter shall give notice that a contract will be let for said printing and publication, together with a reference to this section, and that on or before the first day of September in such year, he will receive sealed proposals for such contract. Such notice shall be given by publication thereof once in each of the first weeks of June, July and August, respectively, in a newspaper to be designated by the state reporter, published in each of the following cities, namely; New York, Albany, Rochester and Buffalo; such newspapers to be so designated as shall be most likely to give notice to the public of such letting; the expense of such *1070 publication to be paid by the state treasurer from the general funds of the state, after the same shall have been approved in writing by the state reporter and audited according to law.
"4. Said contract shall be let to the person who will publish and sell said reports and said combined official series, together with the weekly advance sheets thereof, and furnish the required copies to the various state and county officials, on terms deemed by said state reporter most advantageous to the public and the state, regard being had to the proper execution of the work. Said contract shall be let not earlier than the sixteenth of October, nor later than the first of November, in such years.
"5. Said contract shall require the contractor to continue to publish such reports and the combined official series thereof (with weekly advance sheets thereof to be published as early as practicable after the decisions of said courts shall be handed down), and shall fix the prices at which said publications and each of them, in the various styles of binding and weights and quality of paper, and the sizes and the number of pages of each, shall be delivered within the state of New York.
"6. Said contract shall require the contractor to furnish the state library with fifty-eight copies of the court of appeals and appellate division reports and three copies of the miscellaneous reports, and also to furnish copies of each of said publications as follows: One of each to the clerk of each county, for the use of the county; one of each to the attorney general, for the use of his office; one of each to the state comptroller, for the use of his office; one of each to the clerk of the court of appeals, for the use of that court, and one of each to each judge or justice of a court of record, for the use of his office; and one of each to the various public law libraries in the state, and the expense of delivery thereof shall be borne by the state.
"7. Publication under said contract shall commence on the first day of January, nineteen hundred and forty-one, and shall continue until December thirty-first, nineteen hundred and forty-five (unless said contract is previously annulled by the state reporter); thereafter said contracts shall be made for the period of five years each.
"8. Said contractor shall agree that he will promptly after the publication of each volume of said reports, and constantly thereafter, keep the same on hand for open and public sale, and will deliver the same, complete, bound and lettered, to *1071 any and to all persons desiring to purchase, at a price for each which shall be fixed by said contract.
"9. Said contract shall contain such other provisions as in the judgment of the state reporter may be necessary to safeguard the interests of the state and of the public, and shall be subject to the approval of the chief judge of the court of appeals. The form of the proposed contract complete as to all its terms, except the prices to be paid the contractor, shall be prepared by the state reporter and be placed on file in the office of the law reporting bureau on or before the day of the first publication of notice under subdivision three of this section.
"10. To every proposal there shall be annexed a bond executed by the proposed contractor, with sureties conditioned for the faithful performance of said contract, which bond shall be approved as to form, manner of execution, amount and sufficiency of sureties, by the chief judge of the court of appeals.
"11. The right to reject any and every proposal if deemed unfavorable or disadvantageous is reserved to the state reporter, and the state reporter may readvertise until bids advantageous to the state and to the public have been secured.
"12. If the state reporter determines that a contract has not been faithfully kept and performed by the contractor, or whenever in the judgment of the state reporter the public interest may so require, of which the state reporter shall be exclusive judge and his decision shall be final, the state reporter may, by an instrument in writing signed by him and approved by the chief judge of the court of appeals and filed in the office of the secretary of state, modify said contract in the interest of justice, or annul said contract from a time specified in said instrument and thereupon immediately enter into a new contract likewise to be approved by the chief judge of the court of appeals.
"13. Neither the state reporter nor any of his deputies nor any of the employees of the law reporting bureau shall have any pecuniary interest in said reports or said contracts.
"14. Nothing provided in this article shall affect the obligation of any contracts for the printing and publication of the aforementioned reports, or any of them, in force on July first, nineteen hundred thirty-eight; but the state reporter shall succeed to all the powers, rights and interests with respect to said contracts, possessed by the previous official reporters or board of reporters by whom said contracts were let.”
*1072 It is noted that subdivision (2) (quoted above) provides that the "contract shall be let and said publication shall be made by and under the direction of the state reporter”, and that subdivision (4) provides "[s]aid contract shall be let to the person who will publish and sell said reports * * * on terms deemed by said state reporter most advantageous to the public and the state, regard being had to the proper execution of the work.” Also subdivision (9) provides that "[s]aid contract shall contain such other provisions as in the judgment of the state reporter may be necessary to safeguard the interests of the state and of the public, and shall be subject to the approval of the chief judge of the court of appeals”, and subdivision (11) provides that "[t]he right to reject any and every proposal if deemed unfavorable or disadvantageous is reserved to the state reporter, and the state reporter may readvertise until bids advantageous to the state and to the public have been secured.”
It is Judiciary Law § 434 (12), however, which grants to the State Reporter broad and unusual power. Such section (as quoted above at length) clearly establishes the absolute discretion of the State Reporter (subject only to the approval of the Chief Judge of the Court of Appeals) to make every imaginable decision in the bidding and contracting process for publication of this State’s official court reports.
In 1884 in the case of People v Carr (5 Silvernail 302, 23 NYS 112 [Sup Ct, Gen Term, 3d Dept, Jan. 1884]) review was sought of the action by the Secretary of State, the Comptroller and the State Reporter in making (as a board empowered to contract for same) a contract for the publication of reports of the Court of Appeals. At that time provision for such publication was contained in Code of Civil Procedure § 211, and the court posed the question as to whether, in letting the contract, the contracting board had acted lawfully. The court answered its question in the affirmative as follows:
"There is nothing in Code, section 211, requiring the contract to be made with the lowest bidder or to any particular bidder. The action of the defendants was not limited or restrained after the bids were before them. They are required to 'advertise for, receive and consider proposals for the publication of the reports.’ This the defendants certify was done. They were then required to make a contract, 'on terms the most advantageous to the public, regard being had to the proper execution of the work,’ etc. This the defendants by their return certify they have done. The return is conclusive. *1073 People ex rel. Sims v. Board of Fire Commissioners, 73 N. Y. 437.
"A discretionary power was given by statute to the defendants. It has been exercised by them in making this contract. What is the evidence that such discretion has been abused or that their action was illegal? Who can review such proceedings, and how can they be reviewed? If by this court, then its three justices are called upon to substitute their judgment and their discretion in place of those designated by law. The return of the defendants is a complete justification upon its face of the making of the contract in question and must be taken as true.
"* * * The contract to be made was for the public benefit. The defendants in their discretion could embrace other conditions than those named in the law, if in their opinion they conduced to the public benefit, and hence they could by notice indicate that such requirements would be made. Little v. Banks, 85 N. Y. 258.” (5 Silvernail, at pp 303-304, 23 NYS, at pp 113-114.)
In the much more recent case of Matter of Lawyers Co-op. Pub. Co. v Flavin (69 Misc 2d 493, affd 39 AD2d 616, lv denied 30 NY2d 488) the issue presented was whether the annulment of a similar contract, entered into between the respondent State Reporter Flavin and the petitioner publisher, with the written approval of then Chief Judge of the Court of Appeals, Honorable Stanley H. Fuld, was proper. The allegation in such case was that the publication contract executed November 27, 1970 between the then State Reporter and Lawyers Co-operative Publishing Company had been entered into in violation (in certain respects) of Judiciary Law § 434. Thus, the last previous publisher of the official reports, Williams Press, Inc., withheld on that basis, subscriber lists and certain bound volumes and other material in type from the petitioner, Lawyers Co-operative, and commenced a CPLR article 78 proceeding against the State Reporter and Lawyers Co-operative. Under such circumstances, the then State Reporter determined, with the concurrence of the Chief Judge of the Court of Appeals, that time was of the essence and " 'in the interest of the continuous, timely and accurate publication of the Official State Reports, the said agreement between respondent Flavin and petitioner should be annulled and that there should be a prompt determination of the disputed rights and obligations and of all litigation and then a rebidding of the contract for the publication of the Official State Reports on *1074 indisputable terms’ ” (Matter of Lawyers Co-op. Pub. Co. v Flavin, supra, p 496). This determination was made the subject of the challenge by Williams Press in such case, it being claimed that such determination was arbitrary, capricious and an abuse of discretion.
In Matter of Lawyers Co-op. Pub. Co. v Flavin (supra) the court, at Special Term, raised the question as to whether the determination made by the State Reporter was subject to judicial review. Of direct relevancy to such inquiry was Judiciary Law § 434 (12) which that court held, while acknowledging that the statute did not so state in so many words, barred judicial review. Nonetheless, the court perceived such legislative intent as being implicit in the words of the statute, and the court added the following observation (at p 497): "Furthermore, a form of review is built into the subdivision by the requirement that the decision of the State Reporter be approved by the State’s highest judicial officer.”
This court also finds implicit in the general language of Judiciary Law § 434, when read as a whole, and particularly in subdivision (11) thereof, the legislative intent to repose, subject only to the approval of the Chief Judge, final authority on such matter in the State Reporter. (§ 434 [11] is quoted at length above.)
In the instant case, the precise objection raised by the petitioner is that the successful bidder, respondent, LCP, enclosed with its bid a letter dated August 29, 1985 in which it stated that: "In connection with said bid, LCP also submits two points of clarification, and exception from the bid contract.” The points of clarification/exception are then stated to be as follows:
"1. On page 15, at the end of Section 7, we have added the following sentence: 'The Contractor is hereby granted a nonexclusive license to use such copyrighted material in other publications of the Contractor, and to distribute such material in electronic form.’
"2. On page 19, Section 12, line 2 after the word 'sell’ we added 'copyrighted material published by the State and contained in’, and at line 7 we added 'without a license from the state’.”
These items, it is contended by petitioner, made the bid of LCP unresponsive to the contract and, therefore, void. Petitioner further alleges that in the making of such changes, LCP thereby "appropriated for its own use valuable copy *1075 righted material specifically precluded in the original contract from becoming the property of the contractor.” Petitioner, therefore, maintains that the inclusion of such clarifications/ exceptions in the LCP bid worked a disadvantage to other bidders, and that acceptance of the LCP bid was an abuse of the powers delegated to the State Reporter under Judiciary Law § 434.
While it is true that the addition of terms and conditions to a bid which have the effect of substantially altering the same may be viewed as conferring an advantage to the bidder making such alteration, the question presented here is whether the inclusion of the privilege of copyright by LCP was such a substantial variance.
Judiciary Law § 438 provides as follows:
"§ 438. Copyright of notes prepared by law reporting bureau
"The copyright of the statement of facts, of the head notes and of all other notes or references prepared by the law reporting bureau must be taken by and shall be vested in the secretary of state for the benefit of the people of the state. The secretary of state is authorized by a writing filed in his office to grant to any person, firm or corporation, under such terms and conditions as he and the chief judge of the state of New York may determine to be for the best interests of the state, the right to publish the above mentioned copyrighted matter.”
Precisely stated, the question is whether the purported inclusion in LCP’s bid submitted solely to the State Reporter, pursuant to his contracting powers under Judiciary Law § 434, subject thereafter only to approval by the Chief Judge, can be viewed as such a substantial or material alteration in the bidding process as to disadvantage the other bidders when the matter so sought to be added is totally outside the power of the State Reporter to award.
Matter of C. K. Rehner, Inc. v City of New York (106 AD2d 268) the court stated (at pp 269-270): "It is a matter for the agency to determine whether the variance between the bid and specification is material or substantial in pursuance of the underlying purpose and policy to treat all bidders alike so as to avoid the possibility of fraud, corruption or favoritism. In a proceeding to review any such determination, the judicial function is limited to whether the administrative action may be supported on any rational basis. It is beyond the scope of judicial review to consider the facts de novo nor may the court substitute its judgment for that of the agency (Matter of Kayfield Constr. Corp. v Morris, 15 AD2d 373, 378).”
*1076 In Matter of Cataract Disposal v Town Bd. (53 NY2d 266) the court stated (at p 272): "A minor variation from the terms of an advertisement for bids should be considered material only when it would impair the interests of the contracting public authority or place some of the bidders at a competitive disadvantage (Le Cesse Bros. Contr. v Town Bd. of Williamson, 62 AD2d 28, affd 46 NY2d 960).”
The attempted addition to the contract made by LCP in its bid was, so far as the State Reporter was concerned, an exercise in futility. The State Reporter had no power to confer such a benefit by contract or otherwise. Therefore, it is reasonable to conclude that the State Reporter reasonably viewed the inclusion of such a "clarification/exception” as a minor variation that did not impair the interests of all other proposed bidders. The State Reporter had the right to conclude that all other bidders, with knowledge of the law, particularly in their very specialized field, would recognize the futility of such inclusion.
Superimposed upon the foregoing, one must consider the broad delegation of powers given to the State Reporter under the statute, and specifically his right "to reject any and every proposal if deemed unfavorable or disadvantageous” (Judiciary Law § 434 [11]). He also had the absolute power to reject all bids, and readvertise until finally satisfied that the State and public would be best served by the final contractual product. With all of this in view, it cannot be said that the determination and actions of the State Reporter in accepting the LCP bid following removal of the objectionable matter was arbitrary, capricious or in excess of his authority. Accordingly, such decision is not subject to further judicial review, and the petition herein shall be dismissed.
Attorney for respondents, John T. Fitzpatrick and Chief Judge Sol Wachtler, shall submit a judgment in accordance herewith.

 Subdivision (3) as amended by L 1985, ch 218, § 1, eff June 18,1985.