WBP Central Associates, LLC, Appellant, v Richard DeCola et al., Respondents. [937 NYS2d 306]—

On January 24, 2001, the plaintiff and Deco Construction Corporation (hereinafter Deco), which was then owned by the defendants, entered into a contract for the excavation of a construction site in Yonkers (hereinafter the contract). The contract was secured by a performance bond in the face amount of $750,000. Deco abandoned the project before it was completed. The plaintiff completed the project on its own, with the assistance of several of Deco's subcontractors. The plaintiff secured an arbitration award pursuant to the bonded contract, and ultimately entered a judgment on the award in the sum of $1,812,353.35 against Deco. Deco unsuccessfully sought to vacate the award, which was confirmed by the Supreme Court. The order confirming the arbitration award was affirmed by this Court (*see Matter of WBP Cent. Assoc., LLC v Deco Constr. Corp.*, 44 AD3d 781 [2007]).

The plaintiff and the surety on the performance bond also engaged in litigation with respect to the performance bond. Those parties settled their litigation in January 2007. Specifi-

cally, the surety paid the plaintiff the sum of $550,000, and assigned the plaintiff its rights in an indemnity agreement executed by the surety and the defendants, Richard DeCola (hereinafter DeCola) and his then-wife, Patricia DeCola, also known as Patricia Snowden. DeCola is now the sole shareholder of Deco. The indemnity agreement provided, in pertinent part, that the defendants would "indemnify and save" the surety "harmless from and against every claim, demand, liability, loss, cost [or] charge . . . payable on demand of Surety, whether actually incurred or not [and any] expense, suit, order, judgment and adjudication whatsoever, and any and all liability therefore [sic], sustained or incurred by [the surety] by reason of having executed or procured . . . the execution of said [performance bond], and will place [the surety] in funds to meet same." The indemnity agreement also recited that the surety "shall have the right to pay, settle or compromise any expense, claim or charge of the character enumerated in this agreement, and the voucher or other evidence of such payment shall be prima facie evidence of the propriety thereof," as well as of the defendants' liability to the surety.

"Surety bonds—like all contracts—are to be construed in accordance with their terms" (*Walter Concrete Constr. Corp. v Lederle Labs.*, 99 NY2d 603, 605 [2003]; *see Caravousanos v Kings County Hosp.*, 74 AD3d 716, 718 [2010]). "In New York, a bond is a contract[,] and [a court] therefore look[s] to standard principles of contract interpretation to determine the rights and obligations of a surety under a bond. Surety bonds, like all contracts, are to be fairly construed so as to effectuate the intent of the parties as it has been expressed in the terms of the contract. Where the terms are unambiguous, interpretation of the surety bond is a question of law" (*Travelers Cas. & Sur. Co. v Dormitory Auth.-State of N.Y.*, 735 F Supp 2d 42, 83 [SD NY 2010] [citations and internal quotation marks omitted]).

"The purpose of a performance bond is to insure that a contract will be completed consistent with its terms" (*U.W. Marx, Inc. v Mountbatten Sur. Co.*, 3 AD3d 688, 691 [2004]; *see Matter of Cataract Disposal v Town Bd. of Town of Newfane*, 53 NY2d 266, 271 [1981]). "A performance bond is an undertaking by the surety to be financially responsible to the owner if the surety's principal (i.e., the contractor) does not faithfully perform all of its obligations under the contract. Where its principal is properly terminated for default or is otherwise in default, a surety has the option of either completing the project itself (through a contractor retained by the surety) or paying the owner its damages, i.e., the portion of the owner's comple-

tion cost which exceeds the cost which the owner would have incurred in any event under the original contract" (Haig, Commercial Litigation in New York State Courts § 104:17 [4C West's NY Prac Series 3d ed]). In other words, a "performance surety is to be held liable, upon the default of its principal, for the costs of completing the Contract or conforming the principal's defective work to the terms of the Contract" (*400 15th St., LLC v Promo-Pro, Ltd.*, 28 Misc 3d 1233[A], 2010 NY Slip Op 51580[U], *9 [2010]).

" '[A] surety bond attaches to the principal contract and must be construed in conjunction with it' " (*U.W. Marx, Inc. v Mountbatten Sur. Co.*, 3 AD3d at 691, quoting *Carrols Equities Corp. v Villnave*, 57 AD2d 1044, 1045 [1977]). "Liability of the surety is generally limited to the amount of the bond and as provided in the contract . . . Where . . . the surety fails to perform after the contractor defaults, the surety's liability may include the cost of completion, as well as damages flowing from its breach" (*U.W. Marx, Inc. v Mountbatten Sur. Co.*, 3 AD3d at 691).

By its terms, the performance bond obligated the surety to either complete the project or pay the cost to complete it. The contract was incorporated into the performance bond by reference. The contract between the plaintiff and Deco provided that "the work of the contract" constituted "labor, materials, tools, equipment, bonds and supervision," as well as "all rock drilling & blasting and dirt blasted materials" which were to be removed "from the site." The plaintiff asserted that it paid seven of Deco's subcontractors the total sum of $673,129.75 to complete the project after Deco abandoned it, exclusive of payments made by the plaintiff to the subcontractors for work performed before Deco abandoned the project, and an attorney's fee.

Faced with potential liability of at least $673,129.75, and the arbitration award which exceeded the full amount of the performance bond, the surety acted in good faith and did not engage in fraud by settling the litigation with the plaintiff by paying the plaintiff $550,000 and assigning the plaintiff all of its rights with respect to the indemnity agreement. Moreover, the amount paid to the plaintiff was reasonable (*see John Deere Ins. Co. v GBE/Alasia Corp.*, 57 AD3d 620 [2008]; *Humphreys & Harding, Inc. v Universal Bonding Ins. Co.*, 52 AD3d 324 [2008]; *Lee v T.F. DeMilo Corp.*, 29 AD3d 867, 868 [2006]; *Frontier Ins. Co. v Renewal Arts Contr. Corp.*, 12 AD3d 891, 892 [2004]; *Peerless Ins. Co. v Talia Constr. Co.*, 272 AD2d 919 [2000]).

Pursuant to this Court's power to review a determination made after a nonjury trial, which "is as broad as that of the

trial court," and permits this Court to "render the judgment it finds warranted by the facts, taking into account that in a close case the trial court had the advantage of seeing and hearing the witnesses" (*BRK Props., Inc. v Wagner Ziv Plumbing & Heating Corp.*, 89 AD3d 883, 884 [2011]; *see Northern Westchester Professional Park Assoc. v Town of Bedford*, 60 NY2d 492, 499 [1983]), we find that the Supreme Court erred in its determination that the plaintiff was entitled to the principal sum of only $8,800. As the surety had assigned its rights in the indemnity agreement to the plaintiff, the plaintiff was entitled to the $550,000 that the surety paid to settle the litigation with the plaintiff. "[I]t is irrelevant whether the indemnitor was actually liable on the underlying debt" (*John Deere Ins. Co. v GBE/ Alasia Corp.*, 57 AD3d at 621; *see Lee v T.F. DeMilo Corp.*, 29 AD3d at 868; *Frontier Ins. Co. v Renewal Arts Contr. Corp.*, 12 AD3d at 892). Accordingly, contrary to the approach taken by the Supreme Court, it is of no relevance that the plaintiff and Deco may have entered into a separate contract that covered the work that had not been completed at the time the project was abandoned, as the surety acted in good faith, did not engage in fraud, and the amount it paid was reasonable.

The parties' remaining contentions are without merit. Skelos, J.P., Hall, Austin and Miller, JJ., concur.